TOWNSEND (WASHINGTON v.). See Case No. 17,234.

## Case No. 14,120.

### TOWNSEND SAV. BANK et al. v. EPPING et al.

[3 Woods, 390.] [1]

Circuit Court, S. D. Georgia. April Term, 1877.

HOMESTEAD — ANTECEDENT LIENS — SAW-MILLS— LIEN FOR LOGS FURNISHED — MORTGAGE — PARTIES—PRACTICE IN EQUITY—TAKING ACCOUNT.

1. A homestead exemption established by law cannot affect antecedent liens, and cannot be set up in derogation thereof.

2. An act of the legislature of Georgia gave to persons employed in any steam saw-mill, or who furnished it with saw logs or with anything necessary to carry on the work of the mill, a lien of the highest dignity for the wages of the employés, or for the saw logs and other necessaries furnished. Held, that it was not within the power of the legislature to make such lien paramount to that of prior judgments and mortgages, or other older liens.

3. An act of the legislature of Georgia, passed in 1842, established the lien mentioned in headnote 2, in favor of the employés of steam saw-mills, and those furnishing the mills with logs and other necessaries. On December 16, 1857, an act was passed which repealed the law, so far as it related to all saw-mills upon the several mouths of the Altamaha river, and declared that the term, "mouths of the Altamaha river," should include all the mills within ten miles of Darien, in straight line. Held, that a mill which was not strictly on one of the mouths of the Altamaha, but was em-

1 [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

braced within the net-work of channels extending along the coast and connecting with the main channel of the Altamaha, and was within ten miles of Darien, by a right line, was fully within the terms of the repealing act.

4. A sale made on the foreclosure of a lien for logs furnished a saw-mill, where there was a prior mortgage, conveyed only the equity of redemption, subject to the mortgage.

5. When one of two joint mortgagors conveyed absolutely to the other his equity of redemption, *held*, that he was not a necessary party to a bill to foreclose. But his right to redeem, in case the mortgaged property did not satisfy the mortgage debt, would not be foreclosed by the decree.

6. Without being a party he would be bound, by an account taken, to ascertain the sum due on the mortgage, unless he could show collusion.

7. Courts of equity are always unwilling to turn a complainant out of court on an objection, for want of proper parties, made at the final hearing. If they deem it necessary that a new party be made, they will generally allow the cause to stand over for that purpose.

8. A mortgage lien was paramount to a claim for homestead in the mortgaged premises. *Held*, that the wife of the mortgagor was not a necessary party to a bill to foreclose. The right to homestead was to be considered in the light of a subsequent incumbrance.

9. The wife is only interested to see that the mortgage shall not absorb more than it ought, to the detriment of the homestead, and the husband, being primarily liable on the mortgage note, is the only necessary party to be present at the taking of the account. Such account will be binding on persons only collaterally liable, unless collusion is shown.

In equity. Heard upon pleadings and evidence for final decree. The facts are stated in the opinion of the court.

Thomas M. Norwood, for complainants.
W. S. Basinger, for defendants.

BRADLEY, Circuit Justice. The defendant [Isaac M.] Aiken, and one Goodrich, being in partnership and about to run a steam saw-mill on Herd Island, near the mouth of the river Altamaha, in September, 1866, borrowed of the bank corporation, complainant, the sum of fifteen thousand dollars, and, to secure the payment thereof, executed and delivered to the said bank their three promissory notes for five thousand dollars each, payable on demand, with interest half-yearly in advance, and a mortgage upon the whole tract comprised on Herd's Island, including the saw-mill thereon, with the engines, machinery, etc. The other complainants joined in the notes as sureties. The constitution of Georgia, adopted in 1868, secured to every head of a family a homestead of realty to the value of two thousand dollars, and personal property to the value of one thousand dollars, to be exempt from execution and sale. The legislature afterwards prescribed the mode of setting apart and securing such homestead and property to the sole use and benefit of the family of the party claiming the same. The legislature of Georgia also, in 1868, passed a law giving to employés employed in any steam saw-mill, and to any person furnishing any saw-mill with timber, saw logs or

provisions, or with any thing necessary to carry on the work of said mill, a lien of the highest dignity upon said mill for any debts, dues, wages or demands against the owner for such service, timber or other necessaries, and prescribed the method of executing said lien. Goodrich having sold out his interest in the saw-mill and property to Aiken, the latter, in 1870, took the requisite proceedings for having set off, as homestead, a large part of Herd's Island (not including the saw-mill), but including for personal property, to be exempt from execution, portions of the machinery of the mill. Carl Epping, one of the defendants, in 1870 placed a lien on the mill for timber furnished thereto, and took out an execution to sell the same for a debt of about five thousand dollars. John Strickland placed another lien upon the mill for about one hundred and thirty dollars. Under the latter the mill was put up to sale, and sold to Epping for five thousand one hundred dollars—against the protest of the complainant corporation. Epping claims to hold the whole amount of his bid by virtue of his lien and that of Strickland's, as paramount claims to that of the complainant under its mortgage. The complainants in the present suit seek a decree to foreclose the mortgage given to the bank complainant (which has never been paid), and to set aside as null and void the sale under the lien of Strickland, and to declare the said lien, as well as that of Epping, subordinate to the said mortgage, and for a sale of the property under and by virtue of the mortgage, free and clear of said liens; or, if this cannot be done, that the purchase money bid by Epping at the lien sale may be declared to belong to the complainant. The complainants also seek to be relieved against Aiken's claim to a homestead.

The decision of the supreme court of the United States, in the case of Gunn v. Barry, 15 Wall. [82 U. S.] 610, has disposed of the question relating to the claim of homestead. That court held that the homestead exemption secured by the constitution of Georgia, adopted in 1868, does not affect liens created prior to that time, and cannot be set up in derogation thereof; and, accordingly, in view of this decision, the counsel for the defendants very properly abandoned that defense. It is difficult to perceive any difference in principle between the claim grounded on the lien law referred to and that grounded on the homestead law. The former, as well as the latter, if attempted to be carried out as against debts which became a lien on particular property before the passage of the law, would be obnoxious to the objection of impairing the validity of contracts. To give to a person furnishing timber to a saw-mill a lien for the price, paramount to that of prior judgments, mortgages and other prior liens on the mill, would simply amount to a subversion of those liens pro tanto, without adding any corresponding value to the property. Such a lien has not the merit of a mechanics'

lien, which is usually given for materials furnished and work done to a building, and presumably increasing its value to the amount of the claim. Indeed, the defendant's counsel does not insist that any claim can be set up against the mortgage by virtue of the lien given by the law of 1868. But he bases the lien upon which the defense rests upon a prior law passed in 1842 (Cobb, Dig. 428), amendatory of a steamboat lien law passed in 1841. By the second section of the law of 1842 it was declared that all the provisions of the steamboat lien law should apply to all steam saw-mills, at or near any of the water-courses in the state, in behalf of all and every person or persons who might be employed by the owner for services rendered, or for timber or pine wood, provisions or supplies delivered to any such saw-mill. If this law was in force in 1870, when the timber in this case was furnished by Epping and Strickland, the liens claimed were valid ones, unless liable to some of the other objections which have been urged against them.

But the complainant contends that the second section of the act of 1842 was not in force in 1870, but had been repealed in 1857, in respect of the territory in which the mortgaged premises are situated. Laws 1857, p. 225. The repealing act referred to, which was passed December 16, 1857, enacts that the second section in question, so far as it relates to all the saw-mills upon the several mouths of the Altamaha river, be and is repealed; and that the term "mouths of the Altamaha river," includes all the mills within ten miles in a straight line of Darien. It is conceded that the saw-mill in question is within ten miles, in a straight line, of Darien; but the defendant's counsel insists that it is not on one of the mouths of the Altamaha river. The state map shows, however, that Herd's Island is embraced within the network of channels which extend along the coast at that point, and which connect directly with the main channel of the Altamaha. Indeed, the description of the island in the mortgage bounds it on the south and east by the Altamaha river. But the positive language of the act, defining what is intended by the expression, "mouths of the Altamaha river," is controlling; and I do not see how it is possible to evade its force. In my judgment, the act of 1857 did repeal the second section of the act of 1842, so far as relates to the territory embracing the premises in question, and that no law existed in 1866, when the mortgage was executed, giving any such lien upon the mill in question, as that claimed by the defendants; and as the subsequent act of 1868 can not be invoked to derogate from the validity of the mortgage, neither Epping nor Strickland had any lien which could affect it. Therefore the sale under Strickland's lien must be considered as made subject to the lien of the complainant's mortgage. That sale could only affect the rights of Aiken. Epping, the purchaser, holds the property as Aiken held it, and has only the equity of redemption.

The defendants, however, raise an objection to the bill for want of proper parties. They contend that Goodrich, one of the joint makers of the mortgage notes, is a necessary party. Proper parties are not always necessary parties. It is laid down by Mr. Justice Story, in his work on Equity Pleading, that neither prior nor subsequent incumbrancers are necessary, though they are proper parties in a bill to foreclose. If not made parties, they are not bound by the decree. Section 193, and note. And he says distinctly that where the mortgagor has conveyed his equity of redemption absolutely, the assignee only need be made a party to the bill. Section 197. Goodrich conveyed his equity of redemption in the mortgaged premises to Aiken, and the latter is made a party. If Goodrich has any interest at all in the controversy, it arises from the fact that he may be resorted to ultimately as one of the makers of the notes if the property mortgaged does not bring enough to pay them. This may possibly entitle him to redeem, if he has to pay anything. Not being made a party, this right will not be extinguished. But without being a party he will be bound by the account taken as the amount due, unless he can show collusion. See Haines v. Beach, 3 Johns. Ch. 459. Courts of equity are always unwilling to turn a complainant out of court on the objection for want of parties, made at the final hearing. If they deem it essential that a person should be a party who has not been made such, they will generally allow the cause to stand over in order that he may be brought in. I do not consider that to be necessary in this case. The objection is overruled.

It is also objected that Mrs. Aiken, the wife of the defendant Aiken, should have been made a party, because the suit seeks to subvert the claim of homestead in the mortgaged premises. The mortgage, as we have seen, is paramount to the right of homestead. The latter is to be viewed in the light of a subsequent incumbrance only. The wife, like the joint maker of the note, is only interested that the mortgage shall not absorb more than the just amount due thereon shall require. As to the amount due, the husband, Aiken, being primarily liable therefor, is the only party necessary to be present at the taking of the account; and such account will be binding on persons only collaterally liable, unless collusion be shown. And as to the right of such persons to resort to the mortgaged premises and redeem the same in case they are called upon to bear any part of the debt, we have seen that it is not taken away if they are not made parties. The wife stands in this respect in the same attitude as the joint obligor. She is a proper party, but not a necessary one. The complainants omit her at their peril. Not being made a party, her right to redeem by paying

the mortgage debt is not cut off. In this case, I see no reason for holding the cause over in order to make the wife a party. It is apparent from the evidence in the cause, that the property is insufficient to pay the debt, and as Aiken, the principal debtor, is insolvent, no good would be accomplished by bringing the wife into the litigation. The objection that no demand of payment of the notes was made before filing the bill, is not sustained by the evidence; and, besides this, the bringing of suit is itself a sufficient demand, even in an action at law.

The view which I have taken of the case renders it unnecessary to consider various other questions which were discussed on the argument. A decree must be entered for the complainants, that the corporation complainant is entitled to have the mortgaged premises sold to raise and satisfy the amount due for principal and interest on the several promissory notes secured by the mortgage, and also the costs of suit free and clear of the claim for homestead and of any exemption of property under the constitution of 1868, or laws made in pursuance thereof; and free and clear of any claim under the liens set up by the defendants for furnishing timber or otherwise, and of all and any sale or sales made by virtue of such liens or either of the same; and that it be referred to a master to ascertain and report the amount due the corporation complainant on said notes and mortgage; and that the defendants be foreclosed of all equity of redemption and claim in and to the mortgaged premises that may be sold to pay the said debt.