## McBee *et al. v.* MARIETTA & N. G. RY. CO. *et al.*

*(Circuit Court, E. D. Tennessee, N. D.  December 10, 1891.)*

1. JURISDICTION OF FEDERAL COURTS—DISTRICTS—NON-RESIDENT DEFENDANT.

    Act Aug. 13, 1888, § 1, declares, among other things, that no civil suit shall be brought before the federal circuit or district courts against any person by original process in any other district than that whereof he is an inhabitant; but section 5 provides that nothing in this act shall be construed to repeal or affect any jurisdiction or right mentioned in Act March 3, 1875, § 8.  This section provides that in any suit to enforce any legal or equitable lien on, or claim to, or to remove any lien or cloud upon, property situated in the district where the suit is brought, defendants who are not inhabitants thereof may be made parties, and brought into court by the methods there prescribed.  *Held,* that this latter section applies to an original bill, brought for the purpose of enforcing various liens upon part of a railroad lying in the district as against the lien of a general mortgage, which is about to be foreclosed in the same court by a suit ancillary to another suit in a different district and state; and such original bill may be maintained, although some of the defendants are non-residents of the district.

2. SAME—CITIZENSHIP OF PARTIES—SUPPLEMENTARY PROCEEDING.

    While such bill is an original bill within the meaning of that term as used in equity pleading, yet the suit, in its essence, is supplementary to the ancillary foreclosure suit, which it seeks to oppose, and hence the court's jurisdiction is unaffected by the fact that when the parties are arranged according to their interests in the suit, some who are residents of the same state will be found on opposite sides of the controversy.

In Equity.   Bill by V. E. McBee and others against the Marietta & North Georgia Railway Company, the Central Trust Company of New York, and others, setting up certain liens upon a railroad, and opposing the foreclosure of a mortgage thereon, as injurious to their rights.   On motion to dismiss the bill.   Denied.

*Washburn & Templeton, Green & Shields, J. W. Caldwell,* and *W. T. Welcker,* for plaintiffs.

*Henry B. Tompkins* and *G. N. Tillman,* for defendants.

KEY, J.   The Central Trust Company of New York, 13th January, 1891, filed its bill in this court against the Marietta & North Georgia Railway Company, alleging that it had lately filed its bill in the circuit court of the United States for the northern district of Georgia for the foreclosure of a mortgage executed by said railway company January 1, 1887, to secure its bonds to the amount of $3,821,000 upon its entire lines of road, property, and franchises; interest upon the bonds to be paid semi-annually.   The bill shows that the property covered by the mortgage extends from Marietta, Ga., to Knoxville, Tenn.; that the railway company is a corporation created by the laws of Georgia and North Carolina.   The main line of road is 205 miles long, of which 95½ miles lie in Georgia and 109½ miles in Tennessee.   How or by what authority the railway company came into Tennessee the bill does not disclose.   The bill alleges that the defendant has made default in the payment of its interest, and is insolvent; asks to have this bill filed as ancillary to the suit in Georgia to have a receiver appointed, the mortgage foreclosed, and the money arising therefrom applied to the payment of the bonds.   On the 16th of January, 1891, complainants McBee *et al.* filed

their bill against the complainant and defendant in the first-named bill and against a large number of firms and corporations, in which it is alleged that the portion of the railroad aforesaid which is within the limits of Tennessee was built by the Knoxville Southern Railroad Company, a corporation created by the laws of Tennessee; that complainants and most of the defendants to the bill are lien creditors of said road; that the mortgage in favor of the bondholders aforesaid is void so far as the line of road in Tennessee is concerned, or, if not void, is subject to the prior liens of the creditors of the Knoxville Southern Railroad. They resist the relief sought by the trust company; oppose the filing of the trust company's bill as an ancillary proceeding to the bill in Georgia; say the Knoxville Southern Railroad Company owns the line of road in Tennessee, its property, etc.; ask for the appointment of a receiver, for the sale of that road, for the application of the proceeds to the debts of complainants and such other creditors as are parties or may become parties to the cause. The bill also prays for an injunction against the Central Trust Company to prevent it from prosecuting its ancillary suit in this court, and from having a receiver appointed on the part of the line of railroad in Tennessee. On the 22d day of January, 1891, an order was made appointing a temporary receiver, which recites that—

"These causes came on to be heard and were heard together by order of the court. It is further ordered that the bill of *V. E. McBee et als.* vs. *Knoxville Southern Railroad Company et als.* be treated and regarded as an insolvent bill, and that all creditors of said Knoxville Southern Railroad Company or of George R. Eager, as contractor, be ordered to file their claims in this court, duly proven. But those creditors who have already instituted proceedings to fasten a lien upon said property under the statutes of the state are permitted to prosecute said suits to judgment, but no further. This order is granted without prejudice to any party or corporation in interest to plead, answer, or demur to said bill of V. E. McBee *et als.*, or to take any other appropriate proceedings in said cause."

March 16, 1891, the Central Trust Company filed an amendment to its bill, in which it avers "that the defendant corporation was also formed by the consolidation of the Marietta & North Georgia Railway Company, a corporation duly chartered under the laws of Georgia, and the Knoxville Southern Railroad Company, chartered under the laws of Tennessee." March 30, 1891, the Central Trust Company, the Marietta & North Georgia Railway Company, and the Knoxville Southern Railroad Company filed a demurrer to the McBee bill, which was overruled by the circuit judge. In overruling the demurrer he says:

"The bill is filed by lien claimants of the Knoxville Southern Railroad Company, and its general scope and purpose is to have enforced all liens upon the property of the company, which is alleged to be an insolvent corporation. The statutory liens asserted by complainants and alleged to exist in favor of many of the defendants for work and labor done and material furnished are claimed to have priority over the lien of the bonds secured by the mortgage which the Central Trust Company of New York filed its bill herein to enforce on January 13th, 1891. The present complainants were not made parties to that proceeding. They therefore bring their own suit to have the priority of liens upon the Knoxville Southern Railroad declared, to avoid a mul-

tiplicity of suits, to save waste and useless expense, and to have a single sale of the property. The bill may very properly be heard and considered with that of the Central Trust Company of New York, just as though complainants had intervened in the suit of the trust company for the purpose of asserting the priorities of the statutory lien claims. When the priority of liens are to be declared and adjusted, it is proper to bring all lien claimants, so far as possible, before the court having custody of the property and the authority to determine their relations and respective rights. This is the general object of the bill, and the general and special demurrer thereto are, in the opinion of the court, not well taken."

Afterwards the demurring parties answered the bill, but now the Central Trust Company comes and moves to dismiss the bill—

1. Because it is an original bill in equity, filed by persons claiming to be citizens of North Carolina, against persons who are citizens of Tennessee, against citizens of the state of Georgia, against citizens of New York, and against a citizen of Massachusetts. It is true that section 1 of the act of August 13, 1888, as well as that of March 3, 1887, in regard to the jurisdiction of federal courts, provides that "no person shall be arrested in one district for trial in another in any civil action before a circuit or district court, and no civil suit shall be brought before either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant." Section 5 of these acts, however, provides "that nothing in this act shall be held, deemed, or construed to repeal or affect any jurisdiction or right mentioned in section 8 of the act of March 3, 1875," and that section says "that when, in any suit commenced in any circuit court of the United States to enforce any legal or equitable lien upon, or claim to, or remove any incumbrance, lien, or cloud upon, real or personal property within the district where such suit is brought, one or more of the defendants therein shall not be an inhabitant of or found within said district," such defendants may be made parties, and prescribes the method of bringing them into court. This suit is of the nature indicated in this section, and such non-residents as have claims upon the property in litigation are proper parties to the suit.

2, 3. It is insisted that to arrange the parties to the suit according to their interests in the subject-matter of controversy the result is that parties who are citizens of the same state are upon both sides of the controversy. Suppose we admit these facts as apparent from this bill, does it follow that the bill should be dismissed? The complainant in the first bill, the Central Trust Company, seeks to reach the entire proceeds of the property in Tennessee for the satisfaction of its bonds, and makes only one defendant to its bill, and that defendant, according to the bill, is not a citizen of Tennessee, and that defendant is not indebted to the creditors of the Knoxville Southern Railroad Company. That company, or any of its debtors, are not mentioned in its bill, and, of course, are not made parties to it. The trust company prayed to conduct its suit as ancillary to its action in Georgia. Apparently there is no dispute or controversy between the trust company and the Marietta & North Georgia Railway Company. Both parties to the suit are interested in

avoiding the claims of the creditors of the Knoxville Southern Railroad Company. Those creditors see that an effort is being made to place the railroad on which they claimed their liens in the hands of a receiver whose allegiance belonged to other parties and another jurisdiction. Their debtor was not a party to the suit. They could not join the complainant, nor could they unite fortunes with the defendant. The prayer for ancillary jurisdiction was futile. The jurisdiction of this court over the property within this state was as plenary as that of the court in Georgia over the property in that state. The suit of the Central Trust Company was an original, independent action or bill in equity. Nothing is better settled than that a bill may be filed on the equity side of this court to regulate or restrain a judgment or suit at law in the same court. Such a proceeding is not an original suit, but ancillary and dependent and supplementary merely to the original suit; and such a bill may be maintained without reference to the citizenship or residence of the parties. *Logan* v. *Patrick*, 5 Cranch, 288; *Dunn* v. *Clarke*, 8 Pet. 1; *Clarke* v. *Mathewson*, 12 Pet. 164; *Freeman* v. *Howe*, 24 How. 450–460; *Johnson* v. *Christian*, 125 U. S. 642, 8 Sup. Ct. Rep. 989, 1135. Nor is this all that may be done. "So, too, in many instances, where the jurisdiction originally depends on the citizenship of the parties, if the proceedings happen to affect the interests of other persons not original parties, the latter may often be brought before the court, and made parties, irrespective of their citizenship. This rule arises from the necessity of the case and to prevent failure of justice; for since, when a court has once obtained jurisdiction of a cause, it cannot suffer any other court to disturb its proceedings or interfere with property in its custody, a party aggrieved, if he could not be heard in the court where the judgment was rendered, or in which the property is held, would be without redress." *Conwell* v. *Canal Co.*, 4 Biss. 195; 11 Myer, Fed. Dec. 249. In *Minnesota R. Co.* v. *St. Paul R. Co.*, 2 Wall. 609, it is held that when a bill in equity is necessary to have a construction of the orders, decrees, and acts of a United States court, the bill is properly filed in such court, as distinguished from any state court; and that it may be entertained in such national court, even though the parties would not, for want of proper citizenship, be entitled to proceed by original bill of any kind in a court of the United States. Mr. Justice MILLER, in delivering the opinion of the court, said:

"In contemplation of law this property is still in the hands of the receiver of the court. If in the hands of a receiver of the circuit court, nothing can be plainer than that any litigation for its possession must take place in that court, without regard to the citizenship of the parties. * * * The question is not whether the proceeding is supplemental and ancillary, or is independent and original, in the sense of the rules of equity pleading, but whether it is supplemental and ancillary, or is to be considered entirely new and original in the sense in which this court has sanctioned with reference to the line which divides the jurisdiction of the federal courts from that of the state courts. No one, for instance, would hesitate to say that according to the English chancery practice a bill to enjoin a judgment at law is an original bill in the chancery sense of the word, yet this court has decided many times

that when a bill is filed in the circuit court to enjoin a judgment of that court it is not to be considered as an original bill, but a continuation of the proceeding at law."

*Krippendorf* v. *Hyde*, 110 U. S. 276, 4 Sup. Ct. Rep. 27, supports by cogent reasoning the foregoing authorities.

The cases referred to have reference to judgments or suits at law assailed by proceedings upon the equity side of the court. *Pacific Railroad* v. *Missouri Pac. Ry. Co.* is of a different character. One Ketchum had brought a suit in the United States circuit court of the eastern district of Missouri to foreclose a mortgage on a railroad, making the railroad (a citizen of Missouri) and others defendants. There was a decree of sale, a sale, and its confirmation. The corporation appealed to the supreme court, and the case was affirmed, April, 1880. In June, 1880, the corporation filed a bill in the circuit court above mentioned against another Missouri corporation, a citizen of Missouri, and other citizens of Missouri, alleging fraud in fact in the foreclosure suit. This bill was filed to impeach a decree in an equity cause, and the parties on both sides were citizens of Missouri. Upon demurrer the court said:

"Upon the question of jurisdiction there can be no doubt that the circuit court, as the court which made the Ketchum decree, and had jurisdiction of the Ketchum suit, as this court in *Railroad* v. *Ketchum*, 101 U. S. 289, held it had, has jurisdiction to entertain the present suit to set aside that decree on the grounds alleged in the bill, if they shall be established as facts, and if there shall be no valid defense to the suit, although the plaintiff and some of the defendants are citizens of Missouri. This bill falls within recognized cases which have been adjudged by this court, and have been recently reviewed and reaffirmed in *Krippendorf* v. *Hyde*, 110 U. S. 276, 4 Sup. Ct. Rep. 27. On the question of jurisdiction the suit may be regarded as ancillary to the Ketchum suit, so that the relief sought may be granted by the court which made the decree in that suit without regard to the citizenship of the present parties, though partaking so far of the nature of an original suit as to be subject to the rules in regard to the service of process which are laid down by Mr. Justice MILLER in *Pacific Railroad* v. *Missouri Pac. Ry. Co.*, 1 McCrary, 647. The bill, though an original bill in the chancery sense of the word, is a continuation of the former suit on the question of the jurisdiction of the court." 111 U. S. 521, 522, 4 Sup. Ct. Rep. 583.

If a court of equity has the inherent authority to impeach and set aside its own decrees in the manner stated in this case, may not the court, by like appropriate proceedings, prevent the rendition of a wrongful decree? When the Central Trust Company came into this court voluntarily for the purpose of prosecuting its suit and obtaining a decree, it made itself thereby subject to any control the court may find it equitable to exercise over its suit and over the matters involved in it, to the extent that no wrong or injustice may be done to others. If the rights and interests of third persons should become complicated with the litigation in regard to the subject-matter of the suit or any property in the custody of the court, or any abuse or misapplication of its process, and no state or other court has power to guard or determine those rights and interests without a conflict of authority, especially if it be a federal court, the national court, from the necessity of the case, and to prevent

a failure of justice, will give such third parties a hearing, irrespectiv of their citizenship. Equity regards the substance, rather than the form, of things. The rights and priorities of the parties to the property in the hands of the receiver can be ascertained, declared, and enforced under the existing bills as effectually as in any form of proceeding that might be adopted; and the McBee bill may, without any strain upon the principles and definitions announced by the supreme court, be regarded as auxiliary to and dependent upon the bill of the Central Trust Company. The conclusion reached is that the motion to dismiss the McBee bill should be overruled. It follows also that the demurrer to and the motion to dismiss the amended bill in the *McBee Case* should both be overruled, and it is so ordered.