GROVE et al. v. GROVE et al.

(Circuit Court, D. Kansas, Second Division. April 29, 1899.)

1. FEDERAL COURTS — POWER TO PERMIT AMENDMENTS AFFECTING JURISDICTION.

A federal court has power to retain jurisdiction of a suit by the dismissal of parties who are not indispensable, but whose presence would deprive the court of jurisdiction, or by permitting amendments to supply necessary allegations as to citizenship of parties.

2. FORECLOSURE OF MORTGAGE—PARTIES.

A mortgagor who has parted with all his interest in the mortgaged property is not an indispensable party to a bill for the foreclosure of the mortgage.

3. FEDERAL COURTS—JURISDICTION—LOCAL SUITS.

Under section 8 of the judiciary act of 1875 (Rev. St. § 738), expressly retained in force by the act of August 13, 1888, a suit to foreclose a mortgage may be maintained in the circuit court of the United States in the district where the property is situated, where the requisite amount is involved, and the parties are citizens of different states, though neither is a resident of the district.

4. SAME—PLACE OF BRINGING SUIT—WAIVER BY APPEARANCE.

Exemption from being sued in any other district than the one of which defendant is an inhabitant is a personal one, which is waived by his filing a general demurrer to the bill.

5. PARTIES — DISMISSAL AS TO UNNECESSARY DEFENDANTS — EFFECT OF APPOINTMENT OF RECEIVER.

The appointment of a receiver in a foreclosure suit to take charge of the mortgaged property, and collect the rents therefrom, does not affect the right of the court to permit the complainant to dismiss as to defendants

93 F.—55

who are not indispensable parties, and who have no rights in the property that will be affected by the receivership.

On Demurrer to Bill for Want of Jurisdiction.

J. H. Gillpatrick, for complainants.

Sankey & Campbell, for defendant Nostrum.

HOOK, District Judge.   This is a suit brought by Henry S. Grove and Albert H. Harris, as executors of the estate of Anna M. Grove, deceased, to foreclose a mortgage upon real property in Harper county, Kan., executed by defendants William H. Grove, Mamie J. Grove, and John W. Hirst.   The bill alleges that the complainants are citizens of the state of Pennsylvania; that defendants Grove are also citizens of the state of Pennsylvania, and that Hirst is a citizen of the state of Nebraska; that defendants Hughes, Davis, and Nostrum are citizens of the state of Missouri, and the other defendants are citizens of the state of Kansas.   Anna M. Grove is alleged as being "late of the city and county of Philadelphia and state of Pennsylvania."   The bill also shows that the note and mortgage in suit were executed by defendants Grove and Hirst to Conrad S. Sheive and William S. Magee, as trustees for Anna M. Grove; that Sheive died, and Henry S. Grove was, by appropriate proceedings in Pennsylvania, appointed as his successor in trust; that after the death of the beneficiary, Anna M. Grove, the trustees assigned the note and mortgage to the complainants, as executors.   With one unimportant exception, the defendants, other than the mortgagors Grove and Hirst, are simply charged with having some interest in the mortgaged premises adverse and inferior to the lien of complainants, the nature and character of their interest not being set out.

The defendant Nostrum attacks the jurisdiction of the court on three grounds:   (1) That the complainants being citizens of the state of Pennsylvania, and defendants William H. Grove and Mamie J. Grove, two of the three mortgagors, being also citizens of the state of Pennsylvania, the requisite diversity of citizenship does not exist; (2) that there is no allegation as to the citizenship of William S. Magee and Henry S. Grove, as trustees, and that, as the complainants derived title by assignment from the trustees, they cannot maintain this suit unless it affirmatively appears in the bill that their assignors could do so; (3) that, it appearing affirmatively in the bill that defendant William Nostrum is not a resident of the state of Kansas, he cannot be sued in the United States circuit court for this district by complainants, who are citizens and residents of Pennsylvania,—that is to say, that jurisdiction in this cause is founded solely on the diverse citizenship of the parties, and that it therefore comes within the provision of the act of August 13, 1888, requiring suit to be brought in the district of the residence of either the complainants or the defendants.   During the argument complainants asked leave to dismiss the bill as to defendants William S. Grove, Mamie J. Grove, and John W. Hirst, the mortgagors, and to amend by alleging that the said mortgagors conveyed the mortgaged real property, and parted with all interest therein, to defendant Nostrum, and by alleging that the trustees who

assigned the note and mortgage to the complainants, and the beneficiary Anna M. Grove at the time of her death, were citizens of the state of Pennsylvania, and that the conditions covered by the proposed amendments existed at the time of the institution of this suit. The defendant Nostrum objected to the proposed amendments, denying the power of the court to retain jurisdiction by allowing the amendments, and denying the effect claimed for such amendments, if made.

Leave will be granted to the complainants to make the amendments as applied for within 10 days from this date. While the presence of William H. Grove and Mamie J. Grove as defendants would be sufficient to oust the court's jurisdiction, for the reason that they are citizens of the same state as complainants, it is nevertheless perfectly competent for the court to retain jurisdiction by a dismissal of the bill as to them, unless they are indispensable parties. The retention of jurisdiction by the dismissal of unnecessary parties is now a matter of every-day practice. The power to make dismissals and amendments for that purpose was settled long ago by Mr. Chief Justice Marshall. It may be done by striking out the name of a plaintiff (Conolly v. Taylor, 2 Pet. 556), as well as by the dismissal of a defendant (Vattier v. Hinde, 7 Pet. 252). It may even be done at the entry of the final decree (Carneal v. Banks, 10 Wheat. 181); and, while an amendment as to citizenship necessary to confer jurisdiction cannot be made while the case is pending on appeal in the circuit court of appeals, nevertheless the judgment may be reversed, and the cause remanded, with instructions to dismiss, unless, by proper amendment below, the requisite diversity of citizenship is made to appear. Insurance Co. v. Barker, 32 C. C. A. 124, 88 Fed. 814. The forty-seventh equity rule, dispensing with the joinder of persons who might otherwise be deemed necessary or proper parties, if such joinder would oust the jurisdiction of the court, is merely declaratory of the practice existing at the time of its adoption. The right of the court to retain jurisdiction by the dismissal of parties who are not indispensable is founded in good reason, for it would be an idle ceremony to deny the dismissal of objectionable parties, and to dismiss the bill of complainants, on the ground that the court had no jurisdiction, and then allow the complainants to recommence the suit, omitting the parties whose presence would oust the jurisdiction of the court. The practice observed for so many years is in the interest of a speedy determination of litigation.

Are the defendants Grove and Hirst indispensable parties? Parties in equity suits have been divided by the supreme court of the United States into three classes:

"(1) Formal parties, who have no interest in the controversy between the immediate litigants, but have such an interest in the subject-matter as may be conveniently settled in the suit, and thereby prevent further litigation; (2) necessary parties, who have an interest in the controversy, but whose interests are separable from those of the parties before the court, and will not be directly affected by a decree which does complete and full justice between them; (3) indispensable parties, who not only have an interest in the subject-matter of the controversy, but an interest of such a nature that a final decree cannot be made without either affecting their interests or leaving the controversy in such a condition that its final determination may be wholly incon-

sistent with equity and good conscience." Marco v. Hicklin, 6 C. C. A. 13, 56 Fed. 549.

The leave given to complainants to amend contemplates an allegation that defendants Grove and Hirst, the mortgagors, conveyed the mortgaged property to defendant Nostrum, and that they no longer retain any interest therein. It is well settled that, when a mortgagor has conveyed all of his interest in the mortgaged premises, and retains the equity of redemption no longer, he is not a necessary party to a suit for the foreclosure of the mortgage, and a decree may be obtained extinguishing all adverse claims against the property without the presence of the mortgagor. 2 Jones, Mortg. § 1404; Townsend Sav. Bank v. Epping, 3 Woods, 390, Fed. Cas. No. 14,120; 9 Enc. Pl. & Prac. 332.

As to the second contention of the demurrant, it is sufficient to say that the amendments obviate whatever objections would otherwise be well taken.

It is further contended by Nostrum that, as neither he nor the complainants are residents of Kansas, this court has no jurisdiction, for the reason that the act of March 3, 1887, as corrected by the act of August 13, 1888, provides that "no civil suit shall be brought before either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant, but where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant." These provisions do not apply to a suit of this character. Local actions, such as the one at bar, are the subject of section 8 of the act of March 3, 1875 (18 Stat. 472). This section, which afterwards became section 738 of the Revised Statutes, is, so far as concerns the question under consideration, as follows:

"Sec. 8. That when in any suit, commenced in any circuit court of the United States, to enforce any legal or equitable lien upon, or claim to, or to remove any incumbrance or lien or cloud upon the title to real or personal property within the district where such a suit is brought, one or more of the defendants therein shall not be an inhabitant of, or found within, the said district, or shall not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant or defendants to appear, plead, answer, or demur, by a day certain to be designated, which order shall be served on such absent defendant or defendants, if practicable, wherever found, and also upon the person or persons in possession or charge of said property, if any there be; or where such personal service upon such absent defendant or defendants is not practicable, such order shall be published in such manner as the court may direct, not less than once a week for six consecutive weeks; and in case such absent defendant shall not appear, plead, answer, or demur within the time so limited, or within some further time, to be allowed by the court, in its discretion, and upon proof of the service or publication of said order, and of the performance of the directions contained in the same, it shall be lawful for the court to entertain jurisdiction, and proceed to the hearing and adjudication of such suit in the same manner as if such absent defendant had been served with process within the said district," etc.

All jurisdiction and right mentioned in this section are expressly saved by section 5 of the act of August 13, 1888.

The precise question raised by demurrant is determined adversely

to him by the decision of the supreme court in Greeley v. Lowe, 155 U. S. 58, 72, 73, 15 Sup. Ct. 24, in which it is said:

"It is entirely true that section 8 of the act of 1875, authorizing publication, does not enlarge the jurisdiction of the circuit court. It does not purport to do so. Jurisdiction was conferred by the first section of the act of 1888 of 'all suits of a civil nature,' exceeding two thousand dollars in amount, 'in which there shall be a controversy between citizens of different states'; and this implies that no defendant shall be a citizen of the same state with the plaintiff, but otherwise there is no limitation upon such jurisdiction. Section 8 of the act of 1875, saved by section 5 of the act of 1888, does, however, confer a privilege upon the plaintiff of joining in local actions defendants who are nonresidents of the district in which the action is brought, and calling them in by publication, thus creating an exception to the clause of section 1 that no civil suit shall be brought in any other district than that of which defendant is an inhabitant. Hence it appears that the case of Smith v. Lyon, 133 U. S. 315, 10 Sup. Ct. 303, really has no bearing, as that case involved only the rights of parties to personal actions residing in different districts to sue and be sued, and was entirely unaffected by Act 1888, § 5, which deals with defendants only in local actions, and expressly reserves jurisdiction, if the suit be one to enforce a lien or claim upon real estate or personal property. * * * The act of 1875 gave the right to sue defendants wherever they were found. The act of 1888 requires that they shall be inhabitants of the district. But, in both cases, an exception is created in local actions, wherein any defendant interested in the res may be cited to appear and answer, provided he be not a citizen of the same state with the plaintiff."

In Dick v. Foraker, 155 U. S. 404, 12 Sup. Ct. 124, it is held:

"The circuit court of the United States for the Eastern district of Arkansas has jurisdiction of a suit in equity, brought by a citizen of Ohio against a citizen of Illinois, to remove a cloud from the title to real estate situated in that district."

In considering the question whether circuit courts have jurisdiction under section 8 of the act of 1875, where there is but one defendant and neither party resides within the state in which the suit is brought, the court in Wheelwright v. Transportation Co., 50 Fed. 711, said:

"It is to be observed that the language of the act is: 'When, in any suit commenced in any circuit court of the United States, one or more of the defendants shall not be an inhabitant of or found within the said district.' It would seem that this expression, 'one or more of the defendants,' means one defendant, if there is but one, or one or more, if there are several; for the necessity of the provision springs out of the fact that the res upon which the lien is sought to be asserted and enforced is located in a district not that of the defendant's domicile. If another defendant resided in the district, it would still leave an equal necessity for the provision as to the nonresident defendant. In this class of cases, it is the residence of the defendant away from the property sought to be affected which is the reason for conferring the jurisdiction; for the property must be in the district where the court sits, so that it can lay its hand upon it to enforce the lien. This would be equally true whether there was one or more defendants, or whether some of them were residents."

In Single v. Manufacturing Co., 55 Fed. 553, it is said:

"Under Rev. St. § 738, which provides for serving nonresident defendants by publication 'in a suit in equity to enforce any legal or equitable lien or claim against real or personal property within the district where the suit is brought,' such a suit is maintainable in a circuit court when the parties are citizens of different states, although neither of them resides in the district where suit is brought."

In Carpenter v. Talbot, 33 Fed. 537, it is held that, under the act of congress of March 3, 1887, a suit by a citizen of Ohio against citizens of Vermont, New York, and Maine, to enforce a claim to property in Vermont, is properly brought in the district of Vermont. See, also, Goodman v. Niblack, 102 U. S. 562; American F. L. M. Co. v. Benson, 33 Fed. 456; McBee v. Railway Co., 48 Fed. 243; East Tennessee, V. & G. R. Co. v. Atlanta & F. R. Co., 49 Fed. 608, 614.

There is another reason why the third contention of counsel is not well founded. While the exact provision quoted from the act of August 13, 1888, does not appear in the previous acts of congress defining the jurisdiction of circuit courts, there are nevertheless provisions which are analogous thereto, and the interpretation of which by the courts are authorities in the consideration of the provision quoted. There is a uniform line of decisions of the supreme court of the United States, covering a period of nearly 70 years, to the effect that exemption from being sued in any other district than the one specified is a personal privilege, which may be waived by a general appearance or by pleading to the merits of the action. Express Co. v. Todd, 5 C. C. A. 432, 56 Fed. 104.

In this suit Nostrum filed an answer to the merits, and claimed to be the owner of the real property in controversy, and in the possession thereof. Thereafter the complainants filed replication to the answer. After the filing of the replication, Nostrum obtained the following order from the court: "Now, on this day, upon application of the defendant William Nostrum, he is given leave to withdraw the answer heretofore filed herein by him, and to file instanter his demurrer to complainants' bill." Nostrum, therefore, contends that, having withdrawn his answer, his appearance in the suit and his voluntary submission to the jurisdiction of this court were likewise withdrawn. It is not necessary to consider whether this would be the effect of the permission granted by the court, and the action of Nostrum in conformity therewith, nor whether the court could, without the assent of complainants, permit a party defendant to withdraw his person from the jurisdiction of the court, having once voluntarily submitted to it, because the record shows that subsequently Nostrum, by leave of court, filed a general demurrer to the bill, alleging that it did not state a cause of action in favor of complainants and against him. In other words, Nostrum again appeared to the merits, and his action in that respect is a submission of his person to the jurisdiction of the court, and is inconsistent with the objection now urged. This demurrer was followed by a stipulation between the complainants and Nostrum to the effect that the demurrer should stand confessed, and that the complainants might have leave to amend their bill within the time therein specified. Later, another stipulation was filed, extending the time for the filing of the amended bill until November 1, 1898, at which time it was filed. The objections now urged are by way of a demurrer to the amended bill.

It is also urged that because a receiver has been appointed in this suit it is therefore analogous to the case of Association v. Alderson, 32 C. C. A. 542, 90 Fed. 142. In that case certain lienholders who were citizens of the same state as the complainants were made parties

defendant, but the bill was subsequently dismissed as to them for the purpose of obviating objections to the jurisdiction of the court. The receiver who was appointed had been previously authorized to expend money in completing and furnishing the building in controversy, and to pay therefor in receiver's certificates; thus attempting to create a lien prior to all other liens, including those of the parties who were dismissed out. It is apparent that the rights and interests of those lienholders would be directly and vitally affected by the orders of the court in respect of the completion and furnishing of the building and the creation of additional liens on the property. They were held to be indispensable parties, and their presence in the cause ousted the court of its jurisdiction. The court referred to them as "essential and indispensable parties, directly and ultimately affected by the proposed decree." The defendant company, on whose property the receiver's certificates were to be fastened as a lien, was a private corporation, and in such a case the consent of all of the lienholders was indispensable. Hanna v. Trust Co., 16 C. C. A. 586, 70 Fed. 2. In the case at bar no such condition exists, as the receiver appointed was authorized merely to take charge of, and to lease and receive the rents of, the property in controversy. He was not authorized to create any liens or charges that would affect in any wise the interests of the parties whom the complainants propose to dismiss from this suit. The demurrer will be overruled, with leave to present same again if complainants do not, within the time granted, amend their bill in accordance with the foregoing.