CONWAY (TRIGG v.). See Cases Nos. 14,-172 and 14,173.

CONWAY (UNITED STATES v.). See Case No. 14,849.

## Case No. 3,148.

### CONWELL v. WHITE WATER VALLEY CANAL CO. et al.

[4 Biss. 195.][2]

Circuit Court, D. Indiana. May, 1868.

JURISDICTION—CITIZENSHIP—THIRD PERSONS.

1. It is a general rule that, to give the United States courts jurisdiction of a cause, the plaintiffs and defendants must be citizens of different states. But to this rule there are several exceptions.

2. In a cause over which a national court has acquired jurisdiction solely by reason of the

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

citizenship of the parties, if the rights and interests of third persons should become complicated with the litigation, either as to the original judgment, or any property in the custody of the court, or any abuse or misapplication of its process; and if no state court has power to guard and determine those rights and interests without a conflict of authority with the national court, the latter court will, from the necessity of the case and to prevent a failure of justice, give such third persons a hearing without regard to their citizenship, so far as to protect their rights and interests relating to such judgment or property, and so far as to correct any abuse or misapplication of its process, and no farther. The court will not entertain jurisdiction on behalf of a citizen of the state to litigate new or original matters, or any which might be settled in a state court without interfering with the jurisdiction already attached.

[Approved in Re Sabin, Case No. 12,195. Cited in McBee v. Marietta & N. G. Ry. Co., 48 Fed. 246; Central Trust Co. v. Bridges, 57 Fed. 762, 6 C. C. A. 539.]

[In equity. Bill filed by Abraham Conwell against the White Water Canal Company and others to dissolve the defendant company.]

G. H. Pendleton and J. W. Gordon, for complainant.

Hendricks, Hord & Hendricks, for defendants.

McDONALD, District Judge. This is a suit in equity. The defendants have demurred to the bill. And the question to be decided is whether the demurrer ought to be sustained. In support of the demurrer, several objections to the bill are urged. The principal point insisted on, however, is that this court has no jurisdiction to hear and determine the cause. Our attention will be chiefly directed to this objection. The bill states that the complainant is a citizen of Indiana; and that the defendants, the White Water Valley Canal Company, and the Connersville Hydraulic Company, and the White Water Valley Railroad Company, are all Indiana corporations. There are twelve other defendants to the bill; and as to their citizenship, the bill is silent. Under these circumstances, it is obvious that our jurisdiction of this case as arising from the jurisdiction of the parties to the bill, cannot be sustained. Counsel for the complainant, indeed, admit this; but they contend that there are other facts in the case which support our jurisdiction. Whether this is so, must be determined by the allegations in the bill. It will, therefore, be necessary here to state the substance of the bill.

The bill charges that, for many years past, the complainant has been, and still is, the owner of large tracts of land lying along White Water river, in Indiana, and is thereby entitled to the use of the water of that stream, in its natural flow past and through said lands; that this right has existed in him, and in those under whom he holds, for sixty years past; that before the year 1842, the state of Indiana constructed a canal along the valley of said river past and through said lands, and, by means of feeder dams in the river, diverted the water from its natural flow through said lands and to and by certain mills thereon, of which the complainant is, and long has been, the owner; that the state constructed said canal for the purpose of navigation only, and water power to propel machinery was only an incident thereto; that the landed and riparian proprietors, among whom was the complainant, who transferred to the state the right to locate the canal on their lands respectively and to divert the water of the river as aforesaid into said canal, did so on condition that the canal should be forever used for navigation; that by the terms of those transfers, a nonuser of the canal for purposes of navigation, would revest all the rights so transferred in the donors; that in the year 1842, the state transferred all its interest in said canal to the defendant, the White Water Valley Canal Company; that this company has long since ceased to use the canal for purposes of navigation, and now appropriates its waters so ely to the purposes of propelling machinery; that all the defendants in combination have increased the height of a certain feeder dam on the river, whereby the flow of water through the complainant's lands and to his mills has been much decreased as compared with its flow when the canal was used for navigation; that the defendants have entered into divers fraudulent combinations and contracts relating to the canal and its water power in order to perpetuate the wrongs complained of; and that, by reason of the premises, the defendants have lost all right to the canal, its water power, and privileges, and the same have reverted to the complainant and the other riparian proprietors on said river.

The bill further charges that after said transfer by the state, on the 2nd of February, 1855, one Henry Vallette, to whom the White Water Valley Canal Company was then largely indebted, filed his bill in equity in this court against that company, charging said indebtedness, praying that other creditors of the company might be allowed to join him in that proceeding, and asking that an account should be taken and a receiver appointed to control the concern for his benefit. The bill avers that a receiver was appointed accordingly, and an account ordered to be taken; that a final decree was rendered against the company in favor of Vallette and others including the present complainant, Abraham Conwell; that the said suit is still pending in this court;[2] that the defendant, Hamlin, is the receiver, and has the possession of the property of the company; and that, as such receiver, he has made a fraudulent lease for the term of ninety-nine years renewable forever to the defendant, the Con-

---

[2] [See Vallette v. White Water Valley Canal Co., Case No. 16,820; also, White Water Valley Canal Co. v. Vallette, 21 How. (62 U. S.) 414.]

nersville Hydraulic Company. The bill fails to state in what respect said lease is fraudulent, or whether it was made under an order of this court.

The bill prays that said feeder dam be abated; that the defendants be enjoined from keeping it up or increasing its height; and that they be required to permit the water to pursue its natural channel in the river. Thus have we attempted to state as much of the bill, as will throw any light on the question of jurisdiction. To attempt more would be a serious labor; as the bill fills thirty-six printed pages.

Under this state of facts, the question is, can this court take jurisdiction of the case without regard to the citizenship of the parties? In most cases in this court, the jurisdiction depends on the citizenship of the parties. The reason of this is, that the second section of the third article of the national constitution, and the eleventh section of the judiciary act [1 Stat. 78], give to this court jurisdiction of suits between citizens of different states. And it follows that, in all cases falling within these provisions, the pleadings must show that the plaintiff and defendant are citizens of different states. And, though most of the suits in this court must be subject to this general rule, yet there are many exceptions to it. Thus in revenue cases, and copy-right and patent-right cases, and in many others the jurisdiction depends on the. subject matter of the suit, and not on the citizenship of the parties.

So, too, in many instances where the jurisdiction originally depends on the citizenship of the parties, if the proceedings happen to affect the interests of other persons not original parties, the latter may often be brought before the court and made parties irrespective of their citizenship. Thus for example, if a judgment be rendered in this court between parties whose citizenship gave the jurisdiction, and if any circumstances afterwards arise entitling some third party to have such judgment modified or enjoined, he may, in many instances, maintain a bill for that purpose in this court without reference to his citizenship. This rule arises from the necessity of the case, and to prevent a failure of justice. For, since when a court has once obtained jurisdiction of a cause, it cannot suffer any other court to disturb its proceedings or interfere with property in its custody, a party aggrieved, if he could not be heard in the court where the judgment was rendered or in which the property is held, would be without redress.

This rule is illustrated by the case of Ohio & M. R. Co. v. Fitch, 20 Ind. 499. In that case the railroad was in the hands of a receiver appointed by this court. Fitch had obtained a judgment in a state court against the company; and he attempted to procure its satisfaction by a process of garnishment against the receiver in the court which rendered his judgment. And it was held that this could not be done; and that his only remedy was to apply to this court either for leave to sue the receiver, or for an order on the receiver to pay the judgment. Thus, as he had no remedy in a state court, he could apply for redress in this court, irrespective of his citizenship. So, in the case of Freeman v. Howe, 24 How. [65 U. S.] 450, it was held that where, by virtue of mesne process of attachment issued out of a national court, the marshal levied on property not subject to the attachment, but belonging to a stranger, the stranger could not maintain replevin for the property in a state court, but must seek redress in the court which issued the process, without regard to the citizenship of the parties.

In the recent case of Minnesota R. Co. v. St. Paul R. Co., 2 Wall. [69 U. S.] 609, it was held that when a bill in equity is necessary to have a construction of the orders, decrees, and acts of a United States court, the bill is properly filed in such court, as distinguished from any state court; and that it may be entertained in such national court, even though the parties filing it would not, for want of proper citizenship, be entitled to proceed by original bill of any kind in a court of the United States. That was a case in which, like the present, the property in question was in the hands of a receiver appointed by a national court. And Mr. Justice Miller, in delivering the opinion, said, "that, in contemplation of law, this property is still in the hands of the receiver of the court. If in the hands of a receiver of the circuit court, nothing can be plainer than that any litigation for its possession must take place in that court, without regard to the citizenship of the parties. * * * The question is not whether the proceeding is supplemental and ancillary or is independent and original, in the sense of the rules of equity pleading; but whether it is supplemental and ancillary or is to be considered entirely new and original, in the sense which this court has sanctioned, with reference to the line which divides the jurisdiction of the federal courts from that of the state courts. No one, for instance, would hesitate to say that, according to the English chancery practice, a bill to enjoin a judgment at law is an original bill in the chancery sense of the word. Yet this court has decided many times that when a bill is filed in the circuit court to enjoin a judgment of that court, it is not to be considered as an original bill, but as a continuation of the proceeding at law; so much so, that the court will proceed in the injunction suit without actual service of the subpoena on the defendant, and though he be a citizen of another state, if he was a party to the judgment at law."

From the decisions above referred to and

several others made by the courts of the United States, we venture to deduce the following general rule: In a cause over which a national court has acquired jurisdiction solely by reason of the citizenship of the parties, if the rights and interests of third persons should become complicated with the litigation, either as to the original judgment, or any property in the custody of the court, or any abuse or misapplication of its process; and if no state court has power to guard and determine those rights and interests without a conflict of authority with the national · court; the latter court will, from the necessity of the case, and to prevent a failure of justice, give such third persons a hearing irrespective of their citizenship, so far as to protect their rights and interests relating to such judgment or property, and as to correct any abuse or misapplication of its process, and no farther.

Now the question is, does the case at bar fall within this rule? If so, we have jurisdiction of it; otherwise, not. So far as the question of jurisdiction is concerned, the substance of the case made by the bill is, that this court undoubtedly had jurisdiction of the original case of Vallette against the White Water Valley Canal Company, by reason of the citizenship of the parties; that this court now has the legal custody of said canal and its appurtenances, including the feeder dam in question; that the right to maintain the canal and the feeder dam, and to divert the water from the complainant's lands and mills, has been forfeited; that the complainant has now the right to the natural flow of the water in the stream past his lands and mills; and that this court ought, therefore, to abate said dam, and to restrain all the defendants (including the receiver) from any longer diverting the water from its natural flow in the river.

On the case thus made on paper, several points are suggested: First. It is certain that no state court can interfere with the possession of the property in the custody of this court. Second. It is equally certain that any attempt, on the part of the complainant, Conwell, to exercise the acknowledged common law right of peaceably abating a nuisance, would, if exerted on the feeder dam in question while the same is in the custody of this court, be a contempt of its authority which might be followed by severe punishment. Third. It is also clear that the bill proposes not only to enforce the protection of rights and interests relating to the property in the custody of the court, but it proposes, as an indispensable prerequisite to the enforcement of those rights and interests, to litigate a new and important question—one not involved in the original suit between Vallette and the White Water Valley Canal Company—namely, whether the right to divert water from its natural flow in the stream for use of the canal, has not been forfeited by the perversion of the canal from the purposes of navigation to those of machinery. Fourth. It is furthermore certain that the bill proposes to confine the litigation of this new and important question, not to the original parties to the bill filed by Vallette, but chiefly, if not wholly, to the new parties introduced by Conwell's bill, all of whom—complainant and defendants—are citizens of Indiana; or, at least, none of whom appear to be "citizens of different states." Fifth. It is evident that without litigation of this new and important question of forfeiture, and without a decision of it in favor of the complainant, there is nothing stated in the bill on which any relief could be decreed.

And upon all these points, it seems to us that there is no difficulty touching the question of jurisdiction, except upon that relating to the forfeiture. None of the cases to which we have referred—none which we have found in the adjudication of the United States courts—go the length of holding jurisdiction of a question like this. On the contrary, the case of Dunn v. Clarke, 8 Pet. [33 U. S.] 1, is strongly against the jurisdiction in the case at bar. In that case, Graham, a citizen of Virginia, had recovered against Clarke and others, a judgment in ejectment, in the United States circuit court for the district of Ohio. The defendants to the ejectment suit were citizens of Ohio. Graham afterwards died, and Dunn, a citizen of Ohio, became his executor. Subsequently, Clarke and his co-defendants filed a bill in equity in the same court against Dunn, to obtain a decree for the conveyance of the land in controversy, and praying an injunction of the judgment in ejectment. All the parties to this bill were citizens of Ohio, and it became a question whether the court had jurisdiction of the case. In the opinion delivered on the question it is said: "No doubt is entertained by the court, that jurisdiction of the case may be sustained, so far as to stay execution on the judgment at law. * * * Of the action at law, the circuit court had jurisdiction; and no change in the residence or condition of the parties can take away a jurisdiction which has once attached. If Graham had lived, the circuit court might have issued an injunction to his judgment at law, without a personal service of process, except on his counsel; and as Dunn is his representative, the court may do the same thing as against him. The injunction bill is not considered an original bill between the same parties as at law. But if other parties are made in the bill, and different interests involved, it must be considered, to that extent at least, an original bill; and the jurisdiction of the court must depend upon the citizenship of the parties. In the present case, several persons are made defendants who were not parties to the suit at law, and no jurisdiction, as to them, can be exercised by this or the circuit court. But as there appear to be matters of equity in the case which may be investigated by a

state court, this court think it would be reasonable and just to stay all proceedings on the judgment, until the complainants have time to seek relief in a state court."

We are not aware that the authority of this case of Dunn v. Clarke has ever been questioned. In several respects it is very analogous to the case at bar; and it is identical with it in regard to the bringing forward of new and important matter, not involved in the original cause, to be litigated between new parties, all citizens of the same state. It decides that, so far as such new matters and new parties are concerned, the bill must be deemed "entirely new and original in the sense" which the supreme court of the United States "has sanctioned with reference to the line which divides the jurisdiction of the federal courts from that of the state courts;" and that, so far as it is to be deemed a new and original bill, there can be no jurisdiction unless the parties are citizens of different states. In the case in 8 Pet. [33 U. S.] 1, the new matter was a claim for a specific performance of an unexecuted contract for the conveyance of the land; in the present case the new matter is a claim that the right to divert the water into the canal was forfeited, and that the right to the natural flow of the water in the river has reverted to the complainant. In that case, several new parties were brought before the court; in the present case there are fifteen defendants to the new bill, only two of whom were parties to the original suit. In the former case it was proposed to obtain an injunction of a judgment at law, which, having been the very matter and result of the original litigation, was in no sense new matter, and was therefore temporarily enjoined; but in the present case it is proposed to enjoin the maintenance of a feeder dam, a thing, which, so far as appears, was neither directly nor indirectly involved in the original litigation. In that case, the court denied all jurisdiction over the question of a conveyance of the land in controversy; and if, in the question before us, we feel bound by the authority of that case, we must decline all jurisdiction to hear and determine whether the forfeiture mentioned in the bill has been incurred, and what consequences would legally follow.

Indeed, the present is a stronger case against the jurisdiction of the court than was that of Dunn v. Clarke [supra]. It may, however, be urged that, in the last-named case, the parties had a complete remedy for a specific performance by way of a conveyance of the land in controversy, in a suit in a state court; and that here, according to the case above cited from 20 Ind. 499, the complainant can have no remedy in any of the Indiana courts. To the truth of this latter assertion we cannot assent. In the case in 20th Indiana, the court suggest that the party aggrieved might obtain, from the national court in which the original suit was pending, leave to sue the receiver in a state court, and might then sue

in a state court accordingly. In the present case, if the complainant had leave to sue the receiver in a state court, it is pretty clear that he could join all the other defendants in such suit without any leave from us.

But as there may be some doubt concerning the wisdom of said suggestion of the supreme court of Indiana, we are disposed to put the reason of our decision on another ground, namely, that we see no difficulty in the way of testing in a state court, the principal questions raised in this bill. It is true that no state court, would be justified in disturbing the receiver's possession of the canal property while the original suit of Vallette against the White Water Canal Company is pending. But that possession, as a matter of litigation, is merely incidental to the main matters presented by this bill for adjudication. Those main matters, we repeat, are the questions whether there has been a transfer by the complainant of the right to use water in the canal, on condition that it be used for navigable purposes; whether that condition has been broken; and whether the right to the natural flow of the water past the lands and mills of the complainant has consequently vested in him. Let these questions be settled and the question of the possession by the receiver will be one of little moment. And can there be any doubt that these questions may all be settled by a state court, without interfering with the jurisdiction of this court over the original case of Vallette v. White Water Valley Co. [Case No. 16,820]? A complaint under the Indiana Code of Procedure to establish the complainant's rights under the alleged forfeiture, filed against the principal defendants to the present bill, would fully present all these questions; and a decree settling the question of those rights, and operating in personam, would not, so far as we can see, interfere at all with our jurisdiction, and would, it is presumed, be respected by this court, so far as it should become our business to take any notice of them. Even should a state court in such a proceeding finally deem that the water in question ought no longer to be drawn into the canal, but, on the contrary, be permitted to take its natural course along the river, past Mr. Conwell's farms and mills, this court, on that fact being duly brought to its attention, would no doubt pursue such a course as to avoid all collision with the state courts, and would lend its aid to the promotion of justice between all the parties interested. Thus, while we deny that, so long as the original litigation is pending, any state court could operate on the possession of the property in the hands of the receiver or even make an order to abate the feeder dam or restrain repairs on it, we do not hesitate to say that a state court might, without interfering with this court, try the question of forfeiture and settle all the rights of the complainant set forth in this bill. Mr. Justice Davis, of the

supreme court, concurs with me in this opinion. The bill is dismissed for want of jurisdiction.