UNITED ELECTRIC SECURITIES CO. v. LOUISIANA ELECTRIC LIGHT
CO. et al.

(Circuit Court, E. D. Louisiana. June 28, 1895.)

**1. JURISDICTION OF FEDERAL COURTS—CITIZENSHIP OF PARTIES—INTERVENERS IN EQUITY.**

Where jurisdiction rests upon the diverse citizenship of complainant and defendant, and, during the proceedings, a third party, who is a citizen of the same state with defendant, intervenes, the court will have no jurisdiction of his controversy with defendant, unless the controversy between complainant and defendant is one which draws to the court the possession and control of defendant's property, in which the intervener claims some interest.

**2. CORPORATIONS—RIGHTS OF PURCHASERS OF STOCK.**

As a general rule, a purchaser of stock in a corporation is not allowed to attack the prior acts and management of the company.

**3. SAME—APPOINTMENT OF RECEIVERS.**

A court of equity will not appoint a receiver to take the property of a corporation out of the hands of the managers elected by the stockholders, except as a last resort, and when it is absolutely necessary for the preservation of the trust fund. Where, therefore, it appears that the appointment of a receiver, with the extraordinary expenses incident thereto, would probably render the corporation insolvent, the court will endeavor to give relief by enjoining the managers from the further execution of contracts resulting in the diversion of corporate funds, and from committing other acts of mismanagement.

This was a bill by the United Electric Securities Company, of the state of Maine, against the Louisiana Electric Light Company for the appointment of a receiver and other relief. The American Loan & Trust Company, of Massachusetts, and the New Orleans Traction Company, of Louisiana, have come into the case as interveners.

Fenner, Henderson & Fenner and Denégre & Denégre, for United Electric Securities Co., American Loan & Trust Co., and New Orleans Traction Co.

R. C. Bell, Thomas J. Semmes, and R. S. Taylor, for Louisiana Electric Light Co.

PARDEE, Circuit Judge. As the restraining order already issued in this case maintains the statu quo, I had intended to take the record, and, after thoroughly digesting it, file an elaborate opinion covering the law and the facts; but being advised that other matters are pressing affecting the interests of the Louisiana Electric Light Company and the preservation of the trust fund, I have concluded to announce my already formulated views of the case, and file hereafter, if necessary, a full exposition of the equities involved.

At the outset, it is to be noticed that the question now before the court is in relation to the steps which the court ought to take with a view of preserving the rights of parties and the safety of the trust fund pendente lite. Of course, the court does not now undertake to settle and determine the rights of parties, and decree relief, as might be its duty upon a hearing on the merits of the case. At this time, therefore, I will not make any decided and conclusive finding as to the rights of parties, except as they appear upon the ex parte showing that has been made in the case.

It is next proper to notice the exact status of the case as to the jurisdiction and parties. The suit is brought by the Electric Securities Company, a citizen of the state of Maine, against the Louisiana Electric Light Company, a citizen of the state of Louisiana, and in the suit the American Loan & Trust Company, of Massachusetts, and the New Orleans Traction Company, of Louisiana, have intervened, adopting, as interveners, the charges made and contained in the complainant's bill. The American Loan & Trust Company, as trustee under the first mortgage granted by the Louisiana Electric Light Company, asserts no interest in the case, outside of its interest as trustee; and as the case made shows no outstanding default on the part of the Louisiana Electric Light Company under the mortgage, no further consideration of the American Loan & Trust Company's position in this suit is necessary. The New Orleans Traction Company is a citizen of the same state as the New Orleans Electric Light Company, and it is therefore plain that this court has no jurisdiction over controversies between these two, unless the jurisdiction of the court attaches by reason of the controversy between the Electric Securities Company and the Louisiana Electric Light Company. The jurisdiction of the court must, therefore, depend upon the controversy between the securities company and the light company; and, unless there is such controversy, and one, too, that draws to the court the possession and control of the property of the light company, the case or controversy of the traction company with the electric light company must be left out of consideration.

The Electric Securities Company complains in a double capacity,—as a creditor and as a stockholder. Under the showing made in the case, it seem to be too plain for dispute, that, as a creditor, the Electric Securities Company has no such controversy with the light company as would justify the court in interfering with the property and management of the Louisiana Electric Light Company. There seems to be no doubt that all the interest due on bonds secured by the first mortgage under the trust of the American Loan & Trust Company is paid up, and that there is no other default under the mortgage which would authorize an interference on the part of the trustee, or any bondholder. The case shows that the Louisiana Electric Light Company has property covered by the mortgage worth nearly a million of dollars, without considering in any way its business and good will as a going concern; that it is able to earn a net revenue on its present business more than twice sufficient to pay accruing interest, so that it must be acknowledged that unless hereafter the trustee and the bondholders shall be negligent in asserting their rights under the mortgage, which, by the way, is full of provisions to protect the bondholders, the bonds held by the Electric Securities Company are as secure as bonds of a private corporation can be made. The controversy, then, must depend upon the rights of the Electric Securities Company as a stockholder in the Louisiana Electric Light Company. Although in the bill it is charged that $425,000 of stock issued to the Fort Wayne Company on the organization of the Louisiana Electric Light Company was issued without consideration, in which case it would be fictitious stock, and void

under the constitution and laws of Louisiana; and although the showing here is that one-half of that same stock is owned by the Electric Securities Company, and forms the basis of its standing before this court as a stockholder; and although there is an affidavit on file, made by a former officer of the company, showing that at the time the Electric Securities Company acquired the stock he knew it was watered, and this affidavit is not contradicted,—yet I am disposed to consider that, notwithstanding the stock may have been illegally issued, still the Electric Securities Company may be able to show that it is a bona fide holder; and if not, then the court may find, as strongly appears on the showing now made, that the said stock was not originally illegally issued, and that it has been at all times valid stock.   I may say, further, that, as a general proposition, the purchaser of stock in a corporation is not allowed to attack the acts and management of the company prior to the acquisition of his stock; otherwise, we might have a case where stock duly represented in a corporation consented to and participated in bad management and waste, and, after reaping the benefits from such transactions, could be easily passed into the hands of a subsequent purchaser, who could make his harvest by appearing and contesting the very acts and conduct which his vendor had consented to.   However all this may be, for the purposes of this case I take it that the Electric Securities Company is a bona fide stockholder of the Louisiana Electric Light Company, and entitled to be heard in this case.

The matters complained of in the bill are some of them so far explained by the showing made that it is very doubtful if they ought to be made the basis for any relief at this time; but there are other transactions complained of, which are not sufficiently explained, and which leave upon my mind the impression that the directors of the Louisiana Electric Light Company have, by mismanagement, and by dealings in which some of the active directors were representing more their own individual interests than the interests of the electric light company, involved the light company in contracts, partly executed, which ought to be set aside, either as fraudulent or ultra vires. The showing also leaves the impression upon my mind that, unless the court shall interfere in behalf of the stockholders, the present board of directors may, between now and the next election of directors, further involve and entangle the light company in contracts amounting to waste and endangering the trust fund.

The relief asked by the complainant, the Electric Securities Company, is that the court shall appoint a receiver and take the entire property and its management out of the hands of the present board of directors; and, if this were the only way in which relief could be granted, it would probably be the duty of the court to grant such application.   So far as the matters complained of, actually set forth in the bill as constituting the basis of mismanagement, it seems to me that full relief can be given by an injunction which shall stay the further execution of those contracts and compel the present directors to appropriate the revenues of the company to the payment of legitimate operating expenses and the liquidation of conceded floating indebtedness.   Such an injunction, accompanied by a restrain-

ing order against the making of outside contracts and financial dealing disconnected with the operation of the property, and directing the defendants to give the complainant and its agents and attorneys access to the books and papers of the electric light company, so that they can inform themselves of the past management of the same, will fully protect the Electric Securities Company as a stockholder. To go further, and in the present financial condition of the company appoint a receiver, would probably be extending the relief to such an extent as to entirely eliminate any interest the complainant may have as a stockholder; for it seems to me to be perfectly clear that, in this stage of the finances of the Louisiana Electric Light Company, the appointment of a receiver, with his usual army of retainers and his usually large expenses, accompanied by the necessary loss of credit, will, without question, render the electric light company insolvent beyond remedy, and will compel a foreclosure under the two mortgages, to the irretrievable injury of all stockholders and unsecured creditors. I understand the practice in courts of equity, in dealing with cases of this kind at the suit of a stockholder, is never to resort to the extreme remedy of taking the property out of the hands of the managers chosen and elected by the stockholders, except as a last resort, and when considered to be absolutely necessary for the preservation of the trust fund. Now, is the case presented here one of that character? I do not think so, provided the present financial difficulties can be tided over. The company has a magnificent plant, costing in the neighborhood of $2,000,000, conceded to be worth, as it stands, in the neighborhood of $1,000,000, with a paying business, which, with judicious management, even burdened with the traction contract, will produce a net revenue of over $100,000. The company has a monopoly, in fact, of the whole lighting business in the city of New Orleans. This business can be doubled, perhaps trebled, with ordinary expense, so that the net revenues of the company can be increased two or three fold. As an enterprise, so long as it can meet its fixed charges, so as to stay the hands of bondholders, it cannot be said to be insolvent. Its financial troubles at this time arise from the fact that there is a judgment against it in favor of the Bass Foundry & Machine Works, which, after long litigation in the courts, is now exigible, and under which the very life of the electric plant—the engines—can be seized and sold. This claim amounts to at least $30,000, perhaps $35,000. Although the interest due June 1, 1895, on the bonds of the company appears to have been paid, there will be due under the mortgage to the American Loan & Trust Company by July 1 a sum sufficient to redeem $15,000 of the bonds of the company. The situation is further complicated by the fact that large sums to be earned by the company in furnishing lights for the next eight months, under the contract with the city of New Orleans, have been anticipated by transfers to secure other debts and as collateral, so that no further funds can be safely borrowed upon the faith of expected revenues. If the debt due under the judgment of the Bass Foundry & Machine Works and the amount necessary for the sinking fund for the first mortgage cannot be met or provided for by the present management,

then I am inclined to the opinion that the court must intervene for the protection of the property. Of course, under these circumstances, the appointment of a receiver means that a large sum must be raised at once, and by the aid of receiver's certificates, to meet the present demands, which even the court can no longer delay. It means, in addition to this, that the large floating debt now due by the electric light company, and incurred in operating the property within the last six months, and not due to the Fort Wayne company, McDonald & Hart, must be provided for, because only upon such provision can adequate supplies be obtained for the future operation of the property. The matter of appointing a receiver, then, comes to this: Such appointment is not necessary, provided the present directors are in such a position as to satisfy the court that, under the limitations to be imposed by the court preventing them from alienating or incumbering the property, and from paying out and disposing of the revenues other than as required in due course of operating the property to carry on the business according to the charter, and in the interest of all the stockholders, and enjoining all changes of the status quo in connection with the matters specifically charged in complainant's bill, they can provide for the $15,000 necessary for the sinking fund under the first mortgage, and stay or otherwise provide for the judgment in favor of the Bass Foundry & Machine Works until after the next regular election of directors. If they can so satisfy the court, no receiver will be appointed, but an injunction will issue. If they cannot so satisfy the court, a receiver will be appointed. In either case, the court does not relinquish its control of the property, and probably will not, if the present bill is maintained, until after the next election for directors.

As to the controversy presented by the New Orleans Traction Company, all that need be said is that, so far as relief is herein granted by injunction to the securities company the same necessarily inures to the benefit of the traction company as a stockholder. Whether any relief can be hereafter granted the traction company as a bondholder depends on the course the case may take, and probably upon due intervention by the trustee for all the consolidated first mortgage bonds.