SELIGMAN et al. v. CITY OF SANTA ROSA.

(Circuit Court, N. D. California. April 10, 1897.)

1. EQUITY PROCEDURE—INTERVENTIONS.
   Under section 387, Code Civ. Proc. Cal., providing that any person interested may intervene in an action or proceeding "before the trial," an application to intervene comes too late which is made at the time of the submission of the case on bill and answer.

2. SAME—JURISDICTION OF FEDERAL COURTS—CITIZENSHIP—INTERVENTION.
   The circuit court cannot take jurisdiction of an intervention in a merely personal action, in which no fund has come into the possession of the court, by one who is a citizen of the same state as the party against whom his complaint is directed.

3. SAME—INTERVENTION BY TAXPAYER—ILLEGAL TAXES.
   Though a taxpayer may intervene in a pending suit to stop an illegal levy while his property is subject to taxation, he has no right to intervene to prevent the expenditure of money which has already been collected, upon the ground that the tax which produced it was illegal.

Jesse W. Lilienthal, for plaintiffs.
H. N. Clement and T. C. Judkins, for intervener Mark L. McDonald.
O. O. Webber and Thos. Rutledge, for city of Santa Rosa.

MORROW, District Judge (orally). This case was submitted on bill and answer. The bill contains 195 counts, alleging as many causes of action, from which it appears that the complainants are the owners of certain waterworks bonds issued by the city of Santa Rosa, in this state, in December, 1893. The proceedings relating to the issue of the bonds are set forth in the bill. The bonds held by the complainants are 190 in number, are numbered from 11 to 200, inclusive, and are for the sum of $825 each. Five of these bonds, numbered 11 to 15, inclusive, amounting to $4,125, became due and were payable upon being presented for payment at the office of the city treasurer in Santa Rosa on the first Monday in December, 1896. The bonds were so presented, and payment refused. One hundred and ninety coupons, representing the interest at 4 per cent. per annum on the bonds held by complainants, amounting to $6,270, became due and were payable at the office of the city treasurer in Santa Rosa on the first Monday of December, 1896. It is alleged in the bill that the coupons were so presented, and payment refused. The total amount due on account of the 5 bonds and the 190 coupons is $10,395, for which complainants ask judgment. The answer avers that Wells, Fargo & Co., on the 8th day of December, 1896, presented to the city of Santa Rosa the bonds mentioned in the bill of complaint and 182 of the coupons, and demanded payment thereof, and the common council of the city of Santa Rosa, being then in session, ordered the bonds and coupons to be paid, and directed the city clerk to draw his warrant on the city treasurer to pay the same; that the warrant was thereupon drawn in the manner and form prescribed by the city charter, was signed by the mayor and countersigned by the city clerk, and directed to the treasurer of the city to pay to Wells, Fargo & Co. the sum of $10,131, the amount in full for the bonds and coupons then presented for payment. It is further averred that on the 10th day of December, 1896, Wells, Fargo

& Co. presented said warrant, together with the bonds and coupons, to the city treasurer, and demanded payment thereof, but at the time of the presentation and demand the city treasurer had been and was then enjoined from paying said warrant, or any of the bonds or coupons mentioned in the bill of complaint, by a restraining order issued out of the superior court of the state of California in and for the county of Sonoma. The answer then recites the commencement of an action on December 10, 1896, by one M. L. McDonald, in the superior court of the state of California in and for the county of Sonoma, against the city treasurer of Santa Rosa, praying for a judgment restraining him from paying any of the bonds or coupons described in the complaint in this action, the issuance by the court and service on the city treasurer of a restraining order enjoining and prohibiting him from paying the said bonds and coupons. The answer further recites the proceedings in court arising upon demurrers, amended complaints and motions to dissolve the restraining orders, from which it appears that the defendant has been and is ready and willing at all times to pay the bonds and coupons in question whenever presented for payment; that the city treasurer has also been ready to pay all bonds and coupons presented to him for payment, and would have done so but for the said restraining order. The answer is not sworn to, but it is the answer of a municipal corporation, and is signed by its attorney in his official capacity. I think I must take this answer as true, and find that 182 coupons were presented to the city treasurer for payment, and no more; and, as the bonds and coupons are only payable at the office of the city treasurer in Santa Rosa, it follows that judgment should be for the bonds and such coupons as were so presented. Judgment will therefore be entered for $10,131.

When the motion was made for a judgment upon the pleadings, counsel appeared for Mr. Mark L. McDonald, of Santa Rosa, and moved the court for leave to file an intervention upon the statement that Mr. McDonald was a taxpayer of the city of Santa Rosa, and desired to resist the payment of the bonds and coupons in question. It was stated that a petition could be filed alleging collusion between officers of the city of Santa Rosa and the complainants, whereby a judgment was to be rendered and entered by this court for the recovery of the money sued for therein, it being well known by both parties in said action that the bonds and coupons sued upon were fraudulently, illegally, and collusively issued and delivered by the officers of the municipality of Santa Rosa to the complainants. The motion to intervene was opposed by the complainants upon the grounds: First, because the motion came too late. Section 387 of the Code of Civil Procedure of this state provides that: "Any person may before the trial intervene in an action or proceeding, who has an interest in the matter in litigation, in the success of either of the parties, or an interest against both." It was contended, on behalf of the complainants in this case, that when this motion was made to intervene the trial had not only commenced, but it had ended by the submission of the case on bill and answer. There was nothing left for the parties to do in presenting the controversy to the court for its determination, and it only remained for the court to enter its judgment. I think this is

the correct view to be taken of this motion. It came too late to be entertained as presenting any issue for the judgment of the court. Any other practice would lead to confusion or uncertainty. If the petitioner had been taken by surprise in the proceeding, or had been misinformed as to the time when a motion for a judgment on the pleadings could be made, a different case would have been presented for the consideration of the court, but he appears to have been fully informed upon the subject, and only delayed because of the time required to prepare a petition.

There are other objections to the motion that seem to me to be equally conclusive. The second objection is that the court has no jurisdiction over the intervention. This is an action over which the circuit court has jurisdiction by reason of the diverse citizenship of the parties. The complainants are citizens of New York, and the respondent is a municipal corporation of this state. . The proposed intervention is by a citizen also of this state, and his controversy is with the respondent. His complaint is that the respondent is not properly defending the action. In the case of United Electric Securities Co. v. Louisiana Electric Light Co., 68 Fed. 673, it was determined that the circuit court has no jurisdiction over such a controversy unless the controversy between plaintiff and defendant is one which draws to the court the possession and control of defendant's property, in which the intervener claims some interest. It is contended, however, that this case does draw to the court the possession of property in which McDonald, as a taxpayer, has an interest, namely, the fund out of which the bonds and coupons are to be paid. But I do not understand that the doctrine of the case cited has any such scope. It certainly does not mean that any person may come into a case as an intervener who has an interest in a fund provided by a corporation for the payment of a debt, the possession of which fund is retained by the corporation, but it must mean that the property of the corporation in which the intervener claims an interest must be property that the court has obtained possession and control of for some purpose connected with the case. That is clearly not this case.

The next objection is that the status of McDonald as a taxpayer does not entitle him to intervene in this case. It appears by the complaint that the money to pay these bonds and coupons has been raised by taxation, and is in the treasury for that purpose, but the payment has been enjoined by proceedings in the state court. This is admitted by the answer. A taxpayer may intervene to stop an illegal levy while his property is subject to taxation, because such a levy would cast a cloud upon the title to his property. But I do not understand that this principle can be extended to an intervener where the money has been collected and is in the treasury for the purpose of paying a specific debt. In Kilbourne v. St. John, 59 N. Y. 21, the court said:

"To permit every taxpayer in the state who believes that a tax for an unconstitutional purpose had been imposed by the legislature to commence an action in equity against the state treasurer to restrain him from applying the proceeds in his hands to the purpose directed, and compel him to distribute the fund among the taxpayers of the state, and upon the same principle every taxpayer of a city, county, town, or other municipal corporation, to maintain a like action for like purposes, against the official custodian of its funds, upon the

ground that the tax, or some portion, was not authorized by law, would, I think, lead to most alarming results. It would be the direct opposite of one of the acknowledged sources of equity jurisdiction, which is that it exists when necessary to prevent a great number of suits. This would, I think, inevitably cause an immense number."

There is nothing in the statement of this motion that, in my judgment, shows any right of intervention. The motion will therefore be dismissed.