McDONALD v. SELIGMAN et al.

(Circuit Court, N. D. California. June 22, 1897.)

No. 12,365.

1. FEDERAL COURTS—JURISDICTION—ANCILLARY PROCEEDING.
   A bill in equity filed in the circuit court against the parties to an action at law, which has proceeded to judgment in said court, to enjoin the enforcement of such judgment, and for permission to the complainant to intervene in said action and set up a defense, is ancillary to the original action, so far as the question of jurisdiction is concerned, and may be maintained without regard to diversity of citizenship.

2. JUDGMENT—RES JUDICATA—EQUITY.
   One who has filed a petition to be allowed to intervene and defend in an action at law in the circuit court between citizens of another state and a municipal corporation of which he is a citizen and a taxpayer, and whose petition has been denied on the ground that his status as a taxpayer did not entitle him to intervene, cannot afterwards maintain a bill in equity in said court to enjoin further proceedings in the action at law, and for leave to intervene therein.

C. N. Clement and T. C. Judkins, for complainant.
Jesse W. Lilienthal and J. W. Goodwin, for respondents.

MORROW, Circuit Judge. This is a bill in equity by Mark L. McDonald, a citizen of the state of California, against James Seligman and Isaac N. Seligman, residing and carrying on business as co-partners in the city and state of New York under the firm name and style of J. & W. Seligman & Co., and the city of Santa Rosa, a municipal corporation of the county of Sonoma, state of California, within the Northern district of California, to enjoin the respondents, James and Isaac N. Seligman, from further prosecuting an action at law pending in this court, and entitled "Seligman et al. v. City of Santa Rosa," until the final determination of this suit; and, further, that the complainant be permitted to intervene in said action at law, so that he may set up facts alleged in his bill to constitute a defense to said action, in order that the same may be tried and adjudicated upon its merits, and that such further and other relief may be granted to the complainant as he may, in equity and good conscience, be entitled to. The case now comes up on an order to show cause why the injunction prayed for, restraining the action at law referred to, should not be granted. The respondents, James and Isaac N. Seligman, have appeared specially, through their solicitor, Mr. Jesse W. Lilienthal, to resist said motion. The action at law, which it is now sought to restrain and enjoin, was brought in this court by James and Isaac N. Seligman, the two respondents in the present suit, against the city of Santa Rosa, the other respondent in this suit, to recover the sum of $10,395, alleged to be due the plaintiffs on account of 5 bonds, with 190 coupons, issued by the city of Santa Rosa. That case was submitted to the court on the complaint and the answer, and, after due consideration, judgment was entered in favor of the plaintiffs, James and Isaac N. Seligman, the respondents in the present suit, for the sum of $10,131. See opinion filed April 10, 1897. 81 Fed.

524. Subsequent to the submission, and previous to the rendition of the decision, of that case, Mark L. McDonald, the complainant in this suit, applied to the court for leave to intervene in that action, on the ground that he was a resident and taxpayer of the city of Santa Rosa, and, desired to resist the payment of the bonds and coupons in controversy in that case; it being claimed that said bonds were illegal, and that a proper defense was not being made by the defendant the city of Santa Rosa. This motion was opposed by the plaintiffs on the grounds, among others, that the motion came too late; that, even if it were in time, the court would have no jurisdiction over the intervention, for the reason that the intervener was a citizen of this state, and that, as between him and the city of Santa Rosa, there would be a lack of diversity of citizenship; that the status of McDonald, as a taxpayer, did not entitle him to intervene and object to the payment of the bonds. The motion for leave to intervene was denied, and with respect to the last two grounds urged in opposition to the motion to intervene this court said:

"This is an action over which the circuit court has jurisdiction by reason of the diverse citizenship of the parties. The complainants are citizens of New York, and the respondent is a municipal corporation of this state. The proposed intervention is by a citizen also of this state, and his controversy is with the respondent. His complaint is that the respondent is not properly defending the action. In the case of United Electric Securities Co. v. Louisiana Electric Light Co., 68 Fed. 673, it was determined that the circuit court has no jurisdiction over such a controversy unless the controversy between plaintiff and defendant is one which draws to the court the possession and control of defendant's property, in which the intervener claims some interest. It is contended, however, that this case does draw to the court the possession of property in which McDonald, as a taxpayer, has an interest, namely, the fund out of which the bonds and coupons are to be paid. But I do not understand that the doctrine of the case cited has any such scope. It certainly does not mean that any person may come into a case as an intervener who has an interest in a fund provided by a corporation for the payment of a debt, the possession of which fund is retained by the corporation, but it must mean that the property of the corporation in which the intervener claims an interest must be property that the court has obtained possession and control of for some purpose connected with the case. That is clearly not this case. The next objection is that the status of McDonald as a taxpayer does not entitle him to intervene in this case. It appears by the complaint that the money to pay these bonds and coupons has been raised by taxation, and is in the treasury for that purpose, but the payment has been enjoined by proceedings in the state courts. This is admitted by the answer. A taxpayer may intervene to stop an illegal levy while his property is subject to taxation, because such a levy would cast a cloud upon the title to his property. But I do not understand that this principle can be extended to an intervener where the money has been collected and is in the treasury for the purpose of paying a specific debt. In Kilbourne v. St. John, 59 N. Y. 21, the court said: 'To permit every taxpayer in the state who believes that a tax for an unconstitutional purpose had been imposed by the legislature to commence an action in equity against the state treasurer to restrain him from applying the proceeds in his hands to the purpose directed, and compel him to distribute the fund among the taxpayers of the state, and, upon the same principle, every taxpayer of a city, county, town, or other municipal corporation to maintain a like action for like purposes against the official custodian of its funds, upon the ground that the tax, or some portion, was not authorized by law would, I think, lead to most alarming results. It would be the direct opposite of one of the acknowledged sources of equity jurisdiction, which is that it exists when necessary to prevent a great number of suits. This would, I think, inevitably cause an immense number.' There is nothing in the statement of this motion that in my judgment shows any right of intervention."

The motion for leave to intervene having been denied, McDonald thereupon brought this bill to enjoin the action at law, and to obtain leave to intervene and defend in that action. In other words, it is sought by the bill in equity to accomplish what this court determined could not be done by intervention. It may be observed, further, that no appeal was taken from the order of this court, in the action at law, denying the motion to intervene, and it therefore stands unreversed.

It is objected by counsel appearing specially for the respondents, James and Isaac N. Seligman, in opposition to the motion for the injunction, that the court has no jurisdiction of this suit, as the complainant and the city of Santa Rosa, one of the respondents, are both citizens of the state of California. The bill, on its face, conclusively shows this to be the fact, and it is the well-settled rule that, in order to give the circuit court jurisdiction on the ground of diverse citizenship, this diversity of citizenship must exist between the complainant and all of the respondents. If one or more of the complainants and one or more of the respondents are citizens of the same state, it is fatal to the jurisdiction of the circuit court on the ground of diversity of citizenship. Coal Co. v. Blatchford, 11 Wall. 172; Case of the Sewing Machine Companies, 18 Wall. 553, 574; Vannevar v. Bryant, 21 Wall. 41; Removal Cases, 100 U. S. 457, 469; Thayer v. Association, 112 U. S. 717, 5 Sup. Ct. 355. But it is contended by counsel for complainant that this defect is immaterial, so far as the present suit is concerned, as it is an auxiliary, and not an original, suit; it being claimed that it is but ancillary to, and a continuation of, the action at law referred to. It therefore becomes necessary to determine whether the bill is original or ancillary. The bill seeks to stay the enforcement of the judgment rendered in favor of the respondents, James and Isaac N. Seligman, who were the complainants in the case of Seligman et al. v. The City of Santa Rosa, until the complainant in the present suit can intervene in, and present his defense to, said action. The bill further shows that the defense to be made to said action is that the issue of the bonds in question was illegal and void, and that this defense was not presented in the action at law by reason of the collusion and fraud of the defendant in that action, the city of Santa Rosa, and the plaintiffs therein, James and Isaac N. Seligman. The suit is, in effect, one to impeach a judgment for fraud. It seems to be just such a suit as is described in Jones v. Andrews, 10 Wall. 327, 333, where the supreme court, speaking through Mr. Justice Bradley, said:

"The suit is, in its nature, not an original, but a defensive or supplementary, suit, like a cross bill, or a bill filed to enjoin a judgment of the same court. The bill is filed for an injunction against the garnishee proceedings under the suit at law for the delivery up of the complainant's notes, and for the establishment of his set-off against Andrews. This is, in substance, its character; and if the facts charged furnish a sufficient ground of equity for the relief asked,—as to which the court refrains from expressing any opinion,—the complainant had a right to file it against the defendants, and the court had a right to take cognizance of it as a defensive or supplementary proceeding, growing out of, and having direct reference to, the proceedings of the defendants in the same court against him. The case, in this respect, as before said, is analogous to that of a cross bill or bill of review, or a bill for injunction against a judgment at law in the same court, of which the court has jurisdiction irrespective of the residence of the parties.

[Citing Logan v. Patrick, 5 Cranch, 288; Simms v. Guthrie, **9** Cranch, 25; Clarke v. Mathewson, 12 Pet. 164; Dunlap v. Stetson, 4 Mason, 349, Fed. Cas. No. 4,164.] As to bills for injunction against judgments at law rendered in the same court, Justice Story, in Dunlap v. Stetson, says: 'I believe the general, if not universal, practice has been to consider bills of injunction upon judgments in the circuit courts of the United States not as original, but as auxiliary and dependent, suits, and properly sustainable in that court which gave the original judgment, and has it completely under its control. The court itself possesses a power over its own judgments, by staying execution thereon, and it would be very inconvenient if it did not possess the means of rendering such further redress as equity and good conscience required.' "

It was accordingly held that, the suit described being ancillary and supplemental to the action at law pending in the same court, it could be instituted without respect to the residence or citizenship of the parties. In Minnesota Co. v. St. Paul Co., 2 Wall. 609, 633, a bill in equity was filed to obtain a construction of the orders, decrees, and acts made or done by the same court in other proceedings, and to prevent an undue and unjust advantage which it was claimed would otherwise be obtained, to the detriment of the complainant. A demurrer was interposed to the bill on the ground, among others, that the parties were citizens of the state; and the question arose as to whether or not the bill was an original or a supplementary proceeding, and, if the latter, whether the jurisdictional requisite of diversity of citizenship could be dispensed with. Mr. Justice Miller, in disposing of this question, said:

"It is objected that the present bill is called a 'supplemental bill,' and is brought by a defendant in the original suit, which is said to be a violation of the rules of equity pleading, and that the subject-matter and the new parties made by the bill are not such as can properly be brought before the court by that class of bills. But we think that the question is not whether the proceeding is supplemental and ancillary or is independent and original, in the sense of the rules of equity pleading, but whether it is supplemental and ancillary, or is to be considered entirely new and original, in the sense which this court has sanctioned with reference to the line which divides the jurisdiction of the federal courts from that of the state courts. No one, for instance, would hesitate to say that, according to the English chancery practice, a bill to enjoin a judgment at law is an original bill, in the chancery sense of the word. Yet this court has decided many times that, when a bill is filed in the circuit court to enjoin a judgment of that court, it is not to be considered as an original bill, but as a continuation of the proceeding at law; so much so that the court will proceed in the injunction suit without actual service of subpoena on the defendant, and though he be a citizen of another state, if he were a party to the judgment at law."

In Pacific R. Co. of Missouri v. Missouri Pac. Ry. Co., 111 U. S. 505, 522, 4 Sup. Ct. 583, the bill was there described as follows:

"The bill, though an original bill, in the chancery sense of the word, is a continuation of the former suit, on the question of the jurisdiction of the circuit court."

The general rule as to when a lack of diversity of citizenship will not devest the circuit court of its jurisdiction over the cause will be found well stated in the case of Conwell v. Canal Co., 4 Biss. 195, Fed. Cas. No. 3,148, as follows:

"In many instances where the jurisdiction originally depends on the citizenship of the parties, if the proceedings happen to affect the interests of other persons, not original parties, the latter may often be brought before the court and made parties, irrespective of their citizenship. Thus, for example, if a judgment be rendered in this court between parties whose citizenship gave the jurisdiction,

and if any circumstances afterwards arise entitling some third party to have such judgment modified or enjoined, he may, in many instances, maintain a bill for that purpose in this court without reference to his citizenship. This rule arises from the necessity of the case, and to prevent a failure of justice; for since, when a court has once obtained jurisdiction of a cause, it cannot suffer any other court to disturb its proceedings or interfere with property in its custody, a party aggrieved, if he could not be heard in the court where the judgment was rendered or in which the property is held, would be without redress."

See, also, the cases of Freeman v. Howe, 24 How. 450; Christmas v. Russell, 14 Wall. 81; Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27; Pacific R. Co. of Missouri v. Missouri Pac. Ry. Co., 111 U. S. 505, 522, 4 Sup. Ct. 583; Webb v. Barnwall, 116 U. S. 193, 6 Sup. Ct. 350; Root v. Woolworth, 150 U. S. 401, 14 Sup. Ct. 136. See, on the general proposition of suits in equity to enjoin actions and judgments at law, 3 Pom. Eq. Jur. pp. 2095–2107, §§ 1360–1365.

Counsel for respondents, in support of his contention that the suit must be regarded as an original one, and that, therefore, the lack of diversity of citizenship between the complainant and the city of Santa Rosa is fatal to the jurisdiction of the court, cites the cases of Barrow v. Hunton, 99 U. S. 80; Marshall v. Holmes, 141 U. S. 599, 12 Sup. Ct. 62; Davenport v. Moore, 74 Fed. 945. I do not think that these authorities militate against the rule enunciated by the cases previously cited—that such a suit as the one in the case at bar must be regarded as ancillary to the action at law, and not an original proceeding, if certain principles of jurisdiction are kept in mind. In Marshall v. Holmes, supra, Mr. Justice Harlan, after reviewing the authorities, said:

"These authorities would seem to place beyond question the jurisdiction of the circuit court to take cognizance of the present suit, which is none the less an original, independent suit, because it relates to judgments obtained in the court of another jurisdiction."

But because the supreme court has held that suits instituted in the circuit court to enjoin and impeach for fraud judgments obtained in the courts of other jurisdictions, are original, independent suits, it does not follow that a suit brought in the circuit court to enjoin and impeach for fraud a judgment rendered in that same court is also to be considered an original, independent suit. Where the original action, which it is sought by a bill in equity in the circuit court to enjoin, was instituted in that court, it is manifest that the requisite diversity of citizenship must have existed, otherwise the circuit court could not have taken cognizance of the case. A subsequent suit in the same court, to enjoin the judgment rendered in the former action, is therefore ancillary and supplemental to the original action, and does not depend on the citizenship of the parties, for this jurisdictional requisite was satisfied when the original action was brought. But the situation is entirely different where the original action, which it is sought to enjoin, was instituted in the court of another jurisdiction; for example, a state court. In the state court the jurisdictional requisite of diversity of citizenship does not exist, and no presumptions in that direction can therefore be indulged. So far as the jurisdiction of the state court is concerned, the parties may all be residents and citizens of the state

where the action is brought. But, to give the circuit court jurisdiction where no other ground of jurisdiction exists, a diversity of citizenship must first exist. When this prerequisite is satisfied, and the amount involved is sufficient, there is no limitation to the kind of action that may be instituted in the circuit courts. As was well said in Gaines v. Fuentes, 92 U. S. 10, 18:

"The constitution imposes no limitation upon the class of cases, involving controversies between citizens of different states, to which the judicial power of the United States may be extended; and congress may therefore lawfully provide for bringing, at the option of either party, all such controversies within the federal judiciary."

Therefore, when a bill in equity is brought in the circuit court to enjoin and impeach the judgment rendered by a state court, the jurisdictional requisite of diversity of citizenship must first exist before the suit is cognizable in that court. It is in this respect that the suit is deemed to be an original, independent suit. If this were not so, the circuit courts would, by means of bills to enjoin actions and judgments rendered in state courts, draw to themselves a jurisdiction which they do not possess under the constitution of the United States and the various judiciary acts, unless the requisite diversity of citizenship exists. That is, I take it, what the authorities referred to by counsel for respondents in this connection mean when they speak of the suit as an original, independent, and not an auxiliary, suit. It is significant that all the cases which describe the bill to enjoin as an original suit involved judgments of state courts, and not of the same circuit court. As the present suit is brought to enjoin a judgment rendered, not in the state court, but in this court, in an action at law, where the jurisdictional requisite of diversity of citizenship was satisfied, it may therefore properly be considered as ancillary to that action.

It is, however, further contended by counsel for respondents that this suit must be deemed original, as to the complainant, as he was not a party to the action at law; and the case of Dunn v. Clarke, 8 Pet. 1, is cited to support this contention. In that case, which involved a bill praying for an injunction to restrain a judgment rendered in an action at law in the same circuit court, the supreme court said:

"The injunction bill is not considered an original bill between the same parties, as at law; but if other parties are made in the bill, and different interests involved, it must be considered. to that extent, at least, an original bill, and the jurisdiction of the circuit court must depend upon the citizenship of the parties."

This language is perhaps a little broader than the true limits of the rule permit, and was criticised in the case of Freeman v. Howe, 24 How. 450, where Mr. Justice Nelson used the following language:

"The case in 8 Pet. 1, which was among the first that came before the court, deserves, perhaps, a word of explanation. It would seem from a remark in the opinion that the power of the court upon the bill was limited to a case between the parties to the original suit. This was probably not intended, as any party may file the bill whose interests are affected by the suit at law."

It will be noticed, however, that when the court said in Dunn v. Clarke, supra, that the bill would be considered original when new parties are brought in, it added the phrase, "and different interests

involved." Undoubtedly, if different interests are involved by the bill to enjoin the action at law from those adjudicated in that action, the "jurisdiction of the circuit court must depend upon the citizenship of the parties." Where, however, the same interests are involved, or the bill relates to the same subject-matter adjudicated upon in the action at law, any party who has such an interest in the matter litigated in the action at law, which it is sought to enjoin, as permits him to sue therefor, has the right to file a bill to protect his interest; otherwise, in many instances, he would be without any remedy whatever. I am therefore of the opinion that the bill in the present suit is, to all intents and purposes, ancillary to the action at law pending in this court, and that, therefore, the lack of diversity of citizenship between the complainant and the city of Santa Rosa is not fatal to the jurisdiction of the court. I am also of the opinion that the fact that the complainant in this suit was not a party to the action at law can make no difference with respect to his right to maintain the present suit, provided that in other respects his status as a taxpayer gives him the right to sue. This last phase of the case was decided upon the motion of complainant for leave to intervene in the action at law. Having determined that the present action is in the nature of a defensive or supplementary suit, and ancillary to the action at law, the status of the plaintiff as a complainant again becomes important; and we find him here, as before, seeking to maintain this action on the ground that he is a taxpayer of the defendant the city of Santa Rosa. With respect to this feature of the controversy, I held that his status was not sufficient to entitle him to intervene in that case. If he could not intervene then, how can he maintain this action now? If I was correct in determining that he could not, by his petition, become an intervener in the original action, how can it be said that he may become an intervener by virtue of this supplementary bill? Is it not clear that my previous determination is equally applicable and conclusive against the right of the plaintiff to bring the present suit? No appeal was taken from my decision in the action at law, and the determination of the court in this respect remains unreversed. It may therefore be considered the law of this case, and is fatal to the motion for an injunction. The motion upon the order to show cause will therefore be denied, and the order to show cause discharged, and it is so ordered.